**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AUTOTECH TECHNOLOGIES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 26-cv-10010 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| RADWELL INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Autotech Technologies, L.P. ("Autotech," also referred to as "ATLP") alleges that Defendant Radwell International, LLC ("Radwell") infringes on Autotech's intellectual property rights by, *inter alia*, selling certain old or used Autotech products with a false promise that the products are new. Before the Court today is Autotech's motion for a preliminary injunction ("PI Motion"), dkt. 4,[1] as well as Autotech's related motion for an evidentiary hearing, dkt. 24, and Radwell's motion to strike certain declarations and portions of Autotech's reply brief, dkt. 29. For the reasons stated below, the Court grants Radwell's motion to strike and denies Autotech's motion for a preliminary injunction and for an evidentiary hearing.

## BACKGROUND

### Allegations

Unless otherwise indicated, the following allegations are drawn from the complaint. Dkt. 1 [hereinafter Compl.].

---

[1] The PI Motion, as filed, seeks both a temporary restraining order and a preliminary injunction. However, Autotech has subsequently withdrawn the request for a temporary restraining order, leaving a preliminary injunction as the only remaining requested relief. *See* dkt. 25.

Plaintiff Autotech is a specialized engineering company that designs and manufactures specialty automation control products for industrial settings. Many of its products help control enormous industrial machines that could be very dangerous to operators if the Autotech control unit were to malfunction. Defendant Radwell is an industrial parts and repair business. Dkt. 20 at *3. As relevant to this case, Radwell operates an online store where it sells more than 20 million different components, primarily to specialized consumers such as "manufacturing facilities, utilities companies, and industrial part resellers." *Id.* Components sold by Radwell appear with four listed product conditions, each with a different price point: "Refurbished," "Never Used Radwell Packaging," "Never Used Original Packaging," or "New Product" (together, the "Product Conditions") *Id.* at *3. In the past, Radwell has used other Product Conditions, but these are the four that are currently used. *Id.* Radwell claims that these four Product Conditions appear for products regardless of whether the product is in stock. Dkt. 21 ¶ 16. If a product is not in stock for a requested condition, then the customer is directed either to "request a quote"—which indicates a product that is difficult to acquire—or to "call for availability"—which indicates a product that Radwell does not have in stock but which it believes it can source. *Id.* Customers may purchase products listed as "call for availability" directly from the webstore, even though such products are not in stock. *Id.* ¶ 17. If Radwell is unable to source the purchased product, then it "will contact the customer to see whether the customer is interested in another Product Condition that is in inventory or to cancel the order." *Id.*

Radwell has sold Autotech products since at least 2017. Dkt. 20 at *4. On May 12, 2022, Autotech and Radwell entered into an agreement whereby Radwell became an official distributor of certain Autotech products. Autotech terminated that agreement, without objection from Radwell, in March 2026. Since then, Radwell has continued to sell Autotech products on its website, although it maintains that it does so only as a secondhand seller, not as an authorized distributor. *Id.* Today, Autotech parts sold on Radwell's website are listed with the four Product Conditions described above

for each product. *See* Compl. ¶ 20 (providing links to various Radwell listings of Autotech products, each of which is listed with the four Product Conditions).

**Procedural History**

Although this case is only two months old, it has already generated a complicated history. Autotech filed its complaint and the PI Motion on August 19, 2026. At the time, the PI Motion was styled as an emergency motion. Following an initial hearing where the Court determined that the situation did not constitute an emergency, the Court entered an expedited briefing schedule. About a week later, Autotech filed a second emergency motion, dkt. 12, this time seeking expedited discovery into exemplars of certain Autotech products sold by Radwell. Autotech requested that the discovery be ordered to be completed "sufficiently in advance of ATLP's submission of its reply brief on [the PI] hearing." *Id.* at *13. The Court again determined that no emergency existed, *see* dkt. 13, and then denied Autotech's discovery motion as unduly burdensome and improper, dkt. 17. The next day, September 9, 2026, Autotech filed two "supplemental declarations," along with significant accompanying exhibits, without seeking leave of the Court. Dkt. 18, 19. Later that day, Radwell timely filed its response to the PI Motion. Dkt. 20 [hereinafter PI Resp.]. Five days later—and two days before Autotech's PI reply was due—Autotech filed a motion (the "Evidentiary Hearing Motion") proposing that an evidentiary hearing may be needed to properly resolve the PI Motion. Dkt. 24. The Evidentiary Hearing Motion was accompanied by three new declarations,[2] filed as exhibits. In response, the Court pushed back the upcoming oral argument for the PI Motion by a week and gave Radwell leave to file a written opposition to the evidentiary hearing motion, if Radwell wished to do so. Radwell did. Dkt. 27.

---

[2] One of the "declarations" takes the form of a signed letter, rather than a sworn declaration. *See* dkt. 24-1. However, for ease of reference, the Court will refer to all the exhibits to the Evidentiary Hearing Motion as "declarations."

Two days later, Autotech timely filed its reply brief for the PI Motion, once again accompanied by a new declaration (in addition to other exhibits). Dkt. 26 [hereinafter PI Reply]. About a week later, on September 22, 2026, Radwell filed a motion to strike most of the content of the six declarations Autotech had submitted following its filing of the PI motion. Dkt. 29. To avoid any further delays to the scheduled oral arguments, the Court did not permit Autotech a written reply, instead deciding to allow ample time for an oral response at the upcoming hearing. On September 29, 2026, the oral arguments occurred, after which the Court took all three pending motions under advisement.

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that is never awarded as a matter of right. A party seeking a preliminary injunction must first demonstrate: (1) likelihood of success on the merits; (2) that irreparable harm is likely in the absence of the injunction; and (3) that there is no adequate remedy at law. *See Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). If the moving party fails to demonstrate any one of these three threshold requirements, the Court must deny the motion. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). The court should also, where appropriate, consider any effects that granting or denying a preliminary injunction would have on nonparties, or the public interest. *Id.* When ruling on a preliminary injunction, "all of the well-pleaded allegations [in the movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).

## DISCUSSION

### I. Motion to Strike

The Court will begin with the motion to strike, as its resolution will impact the Court's consideration of the other two motions.

Under Federal Rule of Civil Procedure 6(c)(2), "Any affidavit supporting a motion must be served with the motion." A reply brief may properly be accompanied by an affidavit that refutes arguments or evidence submitted with the response brief. *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 n.1 (7th Cir. 1996). However, it is a foundational rule of civil procedure that a court "does not consider arguments raised for the first time in a reply brief." *Donovan v. Quade*, 830 F. Supp. 2d 460, 466 n.2 (N.D. Ill. 2011) (Nolan, J.) (citing *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009)).

Radwell has moved to strike in full dkt. 18 ("First Su Declaration"), dkt. 19 ("First Kumar Declaration"), dkt. 24-1 ("Hudson Letter"), and dkt. 24-2 ("Second Su Declaration"); and also paragraphs 4 and 14 of dkt. 24-3 ("Second Kumar Declaration") and paragraphs 5–9 and pages 4–10 of dkt. 26-4 ("Third Kumar Declaration") (collectively, "the Declarations"); as well as any portion of Autotech's PI Motion reply brief relying on the Declarations. Radwell argues that evidence provided in the Declarations is not contained within four corners of Autotech's PI Motion memorandum of law or accompanying exhibits. As such, Radwell claims that Autotech violated Rule 6(c)(2) when it filed the Declarations and also that any consideration of the Declarations would be unduly prejudicial to Radwell.

At oral argument, Autotech responded that the evidence submitted in the Declarations merely constitutes Autotech's exploration of representations made to the Court by Radwell at the hearings on August 24 and September 8, 2026. Hr'g Tr. 7–8, Sept. 29, 2026; *see also* PI Reply at *11. However, based on its review of the evidence, the Court believes that the Declarations substantially expand upon the evidence and argumentation provided by Autotech in its memorandum of law. Autotech even

seems to acknowledge as much in its PI Motion reply brief. For example, Autotech argues that the "record has overtaken" the "first sale" defense advanced by Radwell, and that the defense should be evaluated on the basis of the evidence in the Declarations, rather than Radwell's characterization of the record as it existed at the time it filed its response brief. PI Reply at *3. In other words, Autotech urges the Court to put aside one of Radwell's arguments based on evidence to which Radwell had no meaningful opportunity to respond. That is about as direct an admission by Autotech of prejudice to Radwell as can be imagined.

The motion to strike therefore must be granted. One wrinkle remains, however. Three of the Declarations that Radwell has asked this Court to strike were submitted as exhibits to Autotech's motion for an evidentiary hearing. *See* dkt. 24-1, 24-2, 24-3. Although it would be improper and prejudicial for the Court to rely on such evidence when adjudicating the PI Motion, those docket entries were also properly submitted as exhibits to the Evidentiary Hearing Motion. As such, the Court declines to strike the Hudson Letter, the Second Su Declaration, and paragraphs 4 and 14 of the Second Kumar Declaration, but the Court will not give any consideration to them when adjudicating the PI Motion. The First Su Declaration, the First Kumar Declaration, paragraphs 5–9 and pages 4–10 of the Third Kumar Declaration, and any portion of Autotech's PI Reply that rely on the Declarations will be stricken as requested in Radwell's motion.

## II. Motion for Preliminary Injunction: Likelihood of Success on the Merits

At a high level, Autotech argues that, with respect to Radwell's products,[3] "customers are being told facts about source, condition, authorization, discontinuation, original packaging, and product identity that are false, and that goods bearing ATLP marks are materially different because they have not been manufactured, tested, quality-controlled, supported, or updated through ATLP's

[3] For ease of reading, the Court will use "Radwell's products" as shorthand to refer to Autotech-marked products that are sold by Radwell.

systems." PI Mot. *2. It argues that this behavior constitutes profiteering and market confusion, and that a preliminary injunction is therefore warranted. Specifically, Autotech requests that the Court enjoin Radwell from "describing goods as ATLP 'Factory New,' 'New,' 'New Surplus,' 'original,' or 'in original packaging' without verifiable factual support; falsely describing ATLP products as discontinued or obsolete; implying authorization beyond any presently valid written authorization; obscuring serial or manufacturing information; and selling refurbished, repaired, surplus, or otherwise non-factory-new ATLP-branded goods without a prominent transaction-specific disclaimer sufficient to prevent confusion." *Id.* at *1–2. Autotech argues that this relief is "narrowly-tailored" and stresses that it does not seek "to prohibit every lawful resale of a genuine ATLP product." *Id.* at *1.

The first element of a motion for preliminary injunction is likelihood of success on the merits. "A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, [it] must only show that [its] chances to succeed on [the] claims are better than negligible." *Valencia,* 883 F.3d at 966 (internal citations omitted). Autotech brings five counts in the complaint: Trademark Infringement (Count I); False Designation of Origin (Count II); Unfair Competition (Count III); Tortious Interference with Prospective Economic Advantage (Count IV); and Trade Libel / Product Disparagement (Count V). To succeed in its motion for a preliminary injunction, Autotech only needs to show that it is likely to succeed on the merits of at least one claim (and also that the other factors have been met). *See, e.g., Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1096.

### *A. Which Claims Are at Issue*

As an initial matter, Radwell argues that the PI Motion is defective because Autotech "never identifies the claims underlying its motion or explains how the law or evidence would satisfy their elements, citing almost no case law." PI Resp. at *7. The Court is generally inclined to agree. A cursory review of the PI Motion shows that the memorandum of law never invokes any of Autotech's five

counts by name, nor does it use the word "count" at any point. *See generally* PI Mot. (In general, Autotech devotes a remarkably small portion of its brief to likelihood of success on the merits. *See id.* at *9–10.) However, Autotech does mention the sections of the Lanham Act under which its trademark infringement and false designation of origin claims arise. 15 U.SC. §§ 1114, 1125(a). The substance of the memorandum of law, as well as of Autotech's reply brief, also seem to indicate that the PI Motion is based only on the Lanham Act claims. *See* PI Reply *11–12. As such, the Court will construe the PI Motion to derive *solely* from Counts I and II of the complaint for the purposes of establishing likelihood of success on the merits.

To bring a claim under either section of the Lanham Act, Autotech "must establish that (1) [its] mark is protectable, and (2) [Radwell's] use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). With respect to the first element, § 1125(a) extends to common law marks. Autotech argues, and Radwell does not dispute, that all of its products at issue are covered by either registered or common law marks. The Court therefore finds that Autotech's marks are protected under at least § 1125(a).

### *B. First Sale Doctrine*

Many, perhaps most, trademark disputes evaluate two or more competing products and ask whether the products are similar enough to cause consumer confusion. *See, e.g.*, *TY Inc. v. Pop Mart Americas Inc.*, No. 1:26-CV-00463, 2026 WL 1649325 (N.D. Ill. June 8, 2026) (Coleman, J.). This case, however, concerns only products with Autotech marks. In this context, Radwell can potentially avoid liability by invoking the "first sale doctrine," which protects non-authorized distributors from liability for trademark infringement so long as the seller's product is not materially different and has previously been purchased from the trademark owner (i.e., the seller is a reseller). *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 818 (N.D. Ill. 2016) (Castillo, J.), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir.1995)). However, if the products are

materially different, then the first sale doctrine does not apply, and the court must examine whether the products are likely to cause confusion among consumers.

In this case, there is a colorable argument that the first sale doctrine may apply to products Radwell sold with the Conditions of "New Product," "Never Used Original Packaging," and potentially even "Never Used Radwell Packaging." It is quite possible that such products are not materially different from equivalent new products sold directly by Autotech or authorized distributors. However, the Court cannot fathom any way in which Radwell's "Refurbished" products could possibly be materially similar to equivalent new Autotech products. It is therefore clear that the first sale doctrine cannot apply to all of Radwell's products at issue, although it may well apply to some. In the interest of judicial efficiency, the Court will therefore decline to adjudicate Radwell's first sale defense and instead proceed directly to the likelihood of confusion analysis.

*C. Likelihood of Confusion*

In most trademark disputes, "the central inquiry" is whether there is a likelihood of consumer confusion. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009). Autotech argues that Radwell creates confusion among consumers by selling Autotech-marked products that are defective or otherwise substandard. PI Mot. *9. The Seventh Circuit has enumerated seven factors to determine whether a likelihood of confusion exists: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *see also Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058, 1092–95 (N.D. Ill. 2020) (applying these factors in a trademark resale case). "No single factor is dispositive. Courts may assign varying weight to each of the factors depending on the facts

presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Maui Jim*, 459 F. Supp. 3d at 1093 (citing *AutoZone*, 543 F.3d at 929).

Autotech, for its part, has not provided any argument as to whether these factors have been met in the current case. Instead, it argues that, "In the gray market context, courts answer confusion by asking whether the goods bearing the same mark are materially different." PI Reply *10 (citing *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 700 (7th Cir. 2006)).[4] However, Autotech is mistaken. First, this is not a "gray market" case. One of Autotech's citations provides a helpful definition: gray market goods are "goods that bear a United States trademark, are authorized for exclusive production and sale in a foreign country, and are subsequently imported and sold in the United States without the trademark owner's consent." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 n.4 (10th Cir. 2009). Here, there is no allegation that Radwell is sourcing the Autotech products it sells from other countries. Although the standards for consumer confusion in gray market reseller cases and domestic reseller cases (such as this one) generally align, no allegation has been made that Radwell circumvents U.S. trademark law by reimporting Autotech goods designated for foreign sale.

Second, and more important, Autotech is mistaken that a "material differences" analysis supplants the standard consumer confusion analysis in reseller cases (whether gray market or domestic). *See Beltronics*, 562 F.3d at 1074 ("The Lanham Act does not proscribe material differences per se; it proscribes sales and offers for sale that are 'likely to cause confusion, or to cause mistake, or to deceive.'" (quoting 15 U.S.C. § 1114(a)–(b))). Rather, the "material differences" analysis is part of the first sale doctrine, which is an affirmative defense. *Maui Jim*, 459 F. Supp. 3d at 1080. "An

[4] In addition to the other problems with Autotech's argument concerning the evaluation of confusion in this case, the Court also observes that *R.J. Reynolds Tobacco Co.* contains no statement expressing the rule that Autotech claims to apply here. *See generally* 462 F.3d 690. Although *R.J. Reynolds* limits its analysis to materiality, that stems from which issues were appealed, rather than a rule that materiality is the only relevant consideration.

affirmative defense limits or excuses a defendant's liability even if the plaintiff establishes a prima facie case." *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016) (internal quotation marks and citations omitted). In other words, for a plaintiff to prevail when an affirmative defense has been raised, the plaintiff must both show that the defense does not apply *and also* establish a prima facie case for liability. *See* 5 *Wright & Miller's Federal Practice & Procedure* § 1270 (4th ed.) (explaining that Federal Rule of Civil Procedure 8(d) removed the traditional requirement that a defendant choose between pleading an affirmative defense and denying the plaintiff's allegations).

Here's Autotech's failure to make any substantive argument concerning the seven confusion factors elaborated by the Seventh Circuit—even after Radwell raised those factors in its response brief—means that Autotech has not established a prima facie case for its trademark claims. Without making out a prima facie case, Autotech cannot establish that it is likely to prevail on the merits of its complaint. Although it is possible that Autotech's complaint may contain sufficient allegations to make out a prima facie case, that cannot be assumed in the absence of Autotech showing the Court why it is likely to succeed on the merits of its claim. It is not the Court's job to build an argument that the movant failed to make for itself. *See United States v. Illinois*, 795 F. Supp. 3d 1057, 1064 (N.D. Ill. 2025) (Coleman, J.) ("'A mere possibility of success' is not enough to demonstrate a likelihood of success on the merits; to succeed, a plaintiff must make a 'strong showing' that 'normally includes a demonstration of how the applicant proposes to prove the key elements of its case.'" (quoting *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020))).

Moreover, even if Autotech had provided arguments why each (or any) of the confusion factors is likely to be met, the Court is skeptical that Autotech would prevail. Radwell has convincingly argued that its customers, and particularly its customers who buy specialized industrial automating products, are highly sophisticated consumers who can be assumed to exercise a great deal of care (the fourth factor). *See Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1216–17 (7th Cir. 1997)

("[W]here consumers are sophisticated, deliberative buyers, confusion is less likely."). Autotech's brief response to Radwell's cited Seventh Circuit precedent amounts to nothing more than a handwave of inapplicability. *See* PI Reply *10. Radwell also claims, and Autotech has not disputed, that it provides a prominent disclaimer on every Autotech product listing on its site. This disclaimer states that Radwell is not an authorized distributor of Autotech products and has no affiliation with Autotech.[5] Moreover, the Product Condition labels and accompanying descriptions provide significant information to a consumer about the likely condition of the product. It is well established that any risk of actual confusion can be allayed by "sufficiently disclosing that the product differs from the originally sold product." *Beltronics*, 562 F.3d at 1074. Logically, that conclusion must apply with all the more force when the consumers are acknowledged to be sophisticated. Such disclaimers and descriptive information also allay any allegation that Radwell intended to deceive consumers.

Finally, although a preliminary injunction movant need not *prove* actual confusion, the injunction movant still "must provide some type of evidence" in order to prevail on that element. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000). Here, Autotech does not seem to have provided any evidence of actual confusion whatsoever. Indeed, as Radwell points out, given that Autotech claims that Radwell has engaged in four years of trademark infringement, it ought not be difficult to find at least one consumer willing to attest to confusion about Radwell's products, if the infringement is indeed as dire as Autotech claims. PI Resp. *10 (citing *Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995)). Autotech again attempts to waive this away with an argument

[5] Autotech compares the disclaimer that Radwell puts on Autotech products with the disclaimer that it puts on products manufactured by Rockwell, following that company's litigation against Radwell in the District of New Jersey. *Rockwell Automation, Inc. v. Radwell International, Inc.,* No. 15-5246 (RBK/JS) (D.N.J.); *see* PI Motion *11. The Rockwell disclaimers, among other differences, highlight that the product sold may not be "new" in the sense of being recently manufactured. PI Motion *11. The Court tends to agree that a Rockwell-type disclaimer would likely do even more to allay consumer confusion than the present disclaimers on Autotech products. However, under the circumstances, and based on the current record, the Court finds that the current Autotech disclaimers are likely sufficient, in combination with other factors, to allay any significant risk of consumer confusion.

that showing actual confusion is not required. True enough—as noted above, no one element is dispositive. *AutoZone*, 543 F.3d at 929. However, it is also true that actual confusion (along with similarity of marks and intent to deceive) is commonly recognized as a particularly important factor. *Id.* Autotech's failure to identify any evidence in record indicating actual confusion weighs strongly against a finding that it is likely to prevail on the merits of its trademark claims.

In sum, Autotech has failed to make any argument establishing a prima facie case for trademark infringement. Even if it had provided such argumentation, the Court also believes it unlikely that Autotech would prevail in showing that the seven confusion factors have been sufficiently established to demonstrate that consumer confusion is likely. Autotech has not yet demonstrated any likelihood of success on the merits, and that defeats the PI Motion without any need to consider whether there is a likelihood of irreparable harm or that an adequate remedy at law is lacking.

This is a sprawling case, with an evidentiary record that is yet to be fully developed. The Court's ruling should not be taken as expressing any view about whether Autotech's claims could survive a motion to dismiss or, following discovery, a motion for summary judgment. Rather, the Court simply rules that Autotech has not sufficiently shown that it is likely to succeed on the merits of its trademark claims. The motion for a preliminary injunction is denied.[6]

## III. Motion for an Evidentiary Hearing

In light of the above, the Court also denies Autotech's motion for an evidentiary hearing. No amount of evidence that Autotech could develop through such a hearing would overcome the fact that the instant motion does not provide any argument that the required confusion factors elaborated

[6] The same consumer confusion standard used for Lanham Act claims also applies to unfair competition claims under the common law of Illinois. *Maui Jim*, 459 F. Supp. 3d at 1101. The Court therefore notes that, although it does not formally consider for the purpose of the PI Motion whether Autotech is likely to succeed on the merits of Count III, the analysis in this section strongly suggests that Autotech also has not shown a likelihood of success on the merits of its unfair competition claim.

by the Seventh Circuit have been met. Moreover, having reviewed the evidence attached to the motion (in docket entries 24-1, 24-2, 24-3; *see supra* section I), the Court does not believe that any of it would have affected the outcome of its ruling on the PI Motion, had it been considered. Although the Hudson Letter does provide some evidence of actual consumer confusion, *see* dkt. 24-1, it is insufficient by itself to overcome the inadequacies in Autotech's showing of likelihood of success on the merits. The motion is denied.

## CONCLUSION

The Court grants Defendant Radwell's motion to strike [29], subject to the limitation identified above, and denies Plaintiff Autotech's motions for a preliminary injunction [4] and for an evidentiary hearing [24].

**IT IS SO ORDERED.**

Date: 10/23/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge